LEWIS JEFFERSON *v.* JEFFERSON WATSON.

**Questions Raised in Court of Appeals.**

In the absence of a motion setting up grounds for a new trial in the trial court, nothing is brought to this court for review on appeal except the inquiry as to whether the pleadings state any cause of action or defense and whether the evidence heard and properly presented by bill authorizes the judgment, and every other cause is waived by the failure to file a motion for new trial.

**Admissions as Evidence.**

Where an issue is formed as to value of services rendered in caring for an old man during several years of sickness and up to his death as well as to whether such services were rendered and not settled for, it is competent on behalf of the claimant against his estate to prove the declarations made by the decedent showing that it was his intention to pay liberally for such services and such claimant may show that the decedent made several wills during the time and provided payment for such services and the value of such property designated in such wills for these provisions are admissions of such indebtedness and the fact that such wills were destroyed will not prevent their contents as to such claim being shown.

APPEAL FROM MASON CIRCUIT COURT.

February 19, 1885.

OPINION BY JUDGE LEWIS:

Appellee brought this action against appellant, administrator of C. Holliday, and to recover for services of himself and wife as is alleged to have been rendered the decedent at his request and for

expenses incurred in his behalf while he was sick and bed-ridden from November, 1876, to March, 1881.

In his answer the appellant denies his indebtedness as stated, and denies that the plaintiff or his wife rendered the services, or made the expenditures claimed in the petition. It is farther stated as defense that plaintiff and Holliday entered into a written contract dated March 11, 1871, under which plaintiff was to board and wash for Holliday and do his mending for $3.50 per week; that the plaintiff lived upon Holliday's land and in the same house with him and that they had sworn settlements, the last of which was made in January, 1881, when Holliday paid him the full amount claimed and all that Holliday then admitted to be due.

He denies that Holliday ever contracted or agreed to pay plaintiff more than $3.50 per week which was fully paid to January, 1881, in full of all demands. It is further stated that if the services sued for had been rendered, the amount claimed is extravagant.

The first error complained of in this appeal is that the court improperly discharged the rule against the plaintiff and overruled the motion to dismiss the petition for want of proof of the account and demand required by law in actions against personal representations.

As it is not made one of the grounds for a new trial, the question arises whether the alleged error can be considered at all on this appeal.

In the case of *Helm v. Coffey,* 80 Ky. 176, it was held that in the absence of a motion and grounds for a new trial nothing is brought to this court for review on appeal except the inquiry as to whether the pleadings state any cause of action or defense and whether the evidence heard and properly presented by bill authorize the judgment and that every other cause is waived by the failure to call the attention of the court below to it by motion and specific grounds assigned. And in the case of *Lynch v. Stapleton,* 4 Ky. Law Reporter 985, 12 Ky. Opin. 119, it was held that the grounds for a new trial should be specific as an assignment of errors and any error not specifically presented by the motion for a new trial can not be considered on appeal.

As therefore the rule excludes every error from the consideration of this court not first presented in a motion for new trial to and passed upon by the lower court, except those mentioned in the first

case cited, it is apparent that the error in question is not now subject to revision. And it is proper to remark that in the further consideration of this case, all errors which were not presented upon the motion for a new trial, will, without being specially referred to, be omitted.

In the trial of the case by the jury, the court permitted it to be proved that during his sickness, the decedent had several wills written in which the executor was directed to compensate appellee liberally for his services in waiting on and taking care of him, and that in the last one written for him, he gave to appellee and his wife as remuneration for their services a tract of 55 acres which one witness testifies was worth $100 per acre. The court also permitted evidence as to the value of personal property owned by decedent.

It is assigned as error, the admission of evidence not only in respect to the value of the property, but also to the execution of the wills and the contents of them.

In his answer appellant puts in issue the alleged indebtedness on account of services rendered by appellee and his wife to Holliday during his sickness, contending that the written contract entered into between them in which an amount was fixed, comprised all the indebtedness; that he agreed to pay for nothing else; and that the settlement between them in January, 1881, which only related to board, included and was in full of the indebtedness of Holliday to appellee.

It was further stated in defense that the amount sued for was excessive and extravagant.

There was then an issue between the parties not only as to the legal liability of Holliday to appellee for any amount by reason of the alleged services as distinct from the board, but also as to the value of such services.

It was therefore competent to show by the declarations and admissions of Holliday himself that he considered himself bound and agreed to pay for the services sued for in addition to and distinct from the contract for board, and also at what price he valued the services rendered.

The wills written by his directions tend directly to elucidate these errors, for as proved by witnesses, they contained admission that he

was indebted for services rendered in addition to the board, and also an estimate by him of the value of such services, and the amount he was willing to pay therefor.

In the last will he gave appellee and his wife a certain tract of land stated by him to be compensation for their services. It was therefore competent to prove the value of the land for the purpose of showing at what amount he valued their services. It is true the wills were all destroyed, nevertheless, when written they contained declarations and admissions by appellants intestate pertinent to the issues involved in this action, the force and effect of which were not denied by the subsequent destruction of the wills.

As to the competency of the proof in regard to the value of the personal property there is some doubt. But it appears from the evidence that Holliday was confined to his bed most of the time for four years, and a greater part of the time in a helpless condition. That he suffered a great deal and had such diseases as were both painful and offensive; was a very old man, and he had no wife or child or other person dependent upon him. He therefore could, with propriety and without just cause of complaint on the part of any one, expend whatever of his estate he thought proper to make himself comfortable and secure proper attention to his wants. And the evidence shows that he repeatedly declared his wish and intention to pay appellee and his wife liberally. But whether evidence as to the value of his personal property is strictly proper or not, the jury was instructed to find for appellees, if anything, only such amount as they believed from the evidence his services were reasonably worth. So that appellant was not prejudiced even if the evidence was improper.

One of the witnesses was asked the question what Holliday could have paid him to take appellees' place for in 1876 and afterwards in 1878, if he could have gotten rid of appellee, which the court refused to permit answered. What witness might have agreed to take appellees' place for is not the proper criterion of the value of the services actually rendered by appellees which the evidence shows were rendered in the manner required by the sick man, and entirely satisfactory to him. The witness might have agreed to render the services for less than their reasonable value, or he might have failed to render valuable and necessary services at all.

For the same reason evidence showing a certain person had made a contract with Holliday to take appellees' place at certain agreed prices, was properly excluded.

Depositions of witnesses were offered for the purpose of showing the price at which Holliday might have been waited on and cared for while sick in the city of Cincinnati, Ohio.

What might be the reasonable value of such services in a large city or in public hospitals is not a proper rule for determining the value of the services rendered by appellee, at the home of the sick man in the country for various reasons.

The question and only question is, what were the services renered by appellee reasonably worth in the actual situation and condition in which Holliday was by his own selection placed; not what they would have been worth in a large city where, while the appliances and facilities might have been better, he might have regarded it inexpedient and on many accounts improper to go.

It is assigned as an error that the court improperly permitted appellee to testify at all as a witness.

It appears that appellant, a witness interested in the estate of the decedent, was introduced as a witness for the defense, and that upon the conclusion of the evidence for the defendant, appellee was introduced.

Under Subsec. 2, Sec. 606 he clearly had a right to testify after appellant had him introduced as a witness. And as appellant testified in regard to the issues in this case or which involved the statements, transactions and acts of the intestate with appellee, it was clearly competent for the latter to then testify in his own behalf in regard thereto. And we perceive nothing in any of the statements made by him as a witness which would be incompetent according to the strictest construction of the code.

There are other errors complained of in regard to the evidence, either improperly admitted or rejected. But, as in every case not already considered, no avowal was made of what the rejected evidence would be, or else the error was not made a ground for new trial, and for this reason we have omitted reference to them.

The only other matter for consideration is the error of the court in giving and refusing instructions.

So much of the only instruction given at the instance of appellee

as contains the portion to which objection is made is as follows: "If the jury believe from the evidence in the case that plaintiff and his wife either or both of them rendered services to the deceased, while sick and unable to keep and take care of himself by nursing and taking care of him, and in attention to his wishes and necessities, and that deceased either promised plaintiff to compensate him for such services, care and attention, or received or accepted same, then it is the duty of the jury to find for plaintiff," etc. The only objection made to the instruction necessary to notice is that the court told the jury to find for the plaintiff if they believe the services were rendered and the deceased received and accepted same.

Waiving discussion as to the technical accuracy of the instruction, it is difficult to conceive how appellant was prejudiced by it, because it is reasonable to conclude that the jury with all the issues and evidence before them, and the relation of the parties understood by them could have been misled by the instruction. There is no evidence whatever showing or tending to show nor does the relation of appellee and his wife to the deceased, afford any ground whatever for the belief that the services for which they sue now were intended or understood by either party to be rendered gratuitously.

Hence there is no room for the supposition that the jury understood the words "received and accepted" to mean less than an expressed or tacit agreement by deceased to pay for the services.

And in absence of evidence tending to show the services were intended by the parties to be gratuitous receiving and accepting them would be sufficient to raise a promise.

Instruction number 2 asked for by appellant was amended by the court by the addition of the words "and were intended to be included in any such settlement. The only objection to the amendment is that it was wholly unnecessary, the idea conveyed by the words added being already expressed in the instruction without them.

As there was no evidence to authorize Holliday to believe appellee did not intend to charge for the services, or that the services were rendered by him in expectation of a gift or legacy by the last will of deceased, the two instructions based upon such hypothesis were properly refused. And it not being necessary for appellee in order

to recover in this action to prove that there was an express contract to pay for the services the instruction in respect thereto was also properly refused.

Perceiving no error in the record whereby the substantial rights of appellant have been prejudiced the judgment must be affirmed.

Judgment *affirmed.* This case has never been reported in abstract nor in full.

*T. C. Campbell, E. L. Worthington, Barbour & Cochran,* for appellants.

*W. Lindsay, Henry Wadsworth,* for appellee.